IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JEANNE BERGFELD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Cause No.: 4:06CV1025 DDN |
| v. ) | |
| ) | |
| THE BOARD OF ELECTION ) | |
| COMMISSIONERS, FOR THE CITY OF ) | |
| ST. LOUIS, et al. ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S SUGGESTIONS IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

COMES NOW Plaintiff Jeanne Bergfeld, by and through her undersigned counsel, and in opposition to Defendants' motion to dismiss, states as follows:

**INTRODUCTION**

On or about July 7, 2006 Plaintiff filed her Complaint alleging employment discrimination based upon political affiliation, employment discrimination based upon sex, a violation of her procedural and substantive due process rights, as well as state law claims of defamation, and public disclosure of private facts.

Defendants filed a motion to dismiss all counts of Plaintiff's complaint in whole or in part. For the reasons set forth below, as well as those which may be raised during any oral argument on Defendants' motion, Plaintiff respectfully requests this Court deny Defendants' motion and allow this matter to proceed to trial on the merits.

**STANDARD FOR RULING UPON MOTION TO DISMISS**

In reviewing a motion to dismiss, a district court must accept all of the allegations of the plaintiff's complaint as true. <u>In re: General American Life Insurance Co. Sales</u>

PDF created with pdfFactory trial version www.pdffactory.com

Practices Litigation, 391 F.3d 907, 911 (8th Cir. 2004). It must construe the complaint in the light most favorable to the plaintiff. Hafley v. Lohman, 90 F.3d 264, 267 (8th Cir. 1996). A motion to dismiss should be granted only when it appears beyond doubt that the plaintiff can prove no set of facts that would entitle her to relief. In re: General American, 391 F.3d at 911. Under this standard, Plaintiff's Complaint should not be dismissed.

## ANALYSIS

### A. PLAINTIFF'S FIRST AMENDMENT CLAIM

#### 1. Discharge Based Upon Political Affiliation

Under Missouri State law political-party affiliation was required for Plaintiff's hire. See §115.047 R.S.Mo. Specifically the law requires bi-partisanism in Plaintiff's position, i.e., for each Republican, there must be a Democrat. There is no requirement of loyalty to candidates or specific factions within political parties. Because the Plaintiff was not a policymaker, and did not occupy a position where political affiliation was necessary for the <u>duties</u> of the position, the Plaintiff could not be terminated based upon her political affiliation.[1] Instead, Plaintiff's termination was impermissibly based upon her lack of affiliation with the Blunt administration. Plaintiff is protected by the First Amendment to the U.S. Constitution and should be allowed to proceed with her claims.

In 1976 the U.S. Supreme Court held that the dismissal of a public employee based upon his/her political affiliation violates both the First and Fourteenth Amendments to the United States Constitution, unless the employee holds a policymaking position. Elrod v. Burns, 427 U.S. 347 (1976). Patronage dismissals can

---

[1] Unless Plaintiff qualified for the job as a Republican and later transferred to another political party, which is not alleged herein. Plaintiff came into the position as a Republican and never wavered in her political affiliation.

2

PDF created with pdfFactory trial version www.pdffactory.com

be justified only if they advance a governmental, rather than a partisan, interest. Id. at 362.

In Branti v. Finkel, 445 U.S. 507 (1980), the Court built upon the Elrod decision holding that a public employee is protected from discharge due to a change in the political environment. While courts still frequently look at whether the position is policymaking, under Branti an inquiry also needs to be made into whether political affiliation is an appropriate requirement for the position. Branti at 518. If political affiliation is not an appropriate requirement, a public employee may not be terminated based upon his/her political affiliation. Id. at 518-19.

While the parties in the case at bar are in agreement that Plaintiff's First Amendment claim must be analyzed under Elrod and Branti, in an effort to persuade this Court to dismiss Plaintiff's claim, Defendants impermissibly attempt to narrow the holdings in a way not supported by the cases. Indeed, Defendants cite Branti for the proposition that "political affiliation is a legitimate factor to be considered [in termination] even though [the position] is neither confidential nor policy making in character". Discussing this taken-out-of-context proposition of law, the Branti Court gave this example also citied by the Defendants:

> "...if a State's election laws require that precincts be supervised by two election judges of different parties, a Republican judge could be legitimately discharged solely for changing his party registration. That conclusion would not depend on any finding that the job involved participation in policy decisions or access to confidential information. Rather, it would simply rest on the fact that party membership was essential to the discharge of the employee's governmental responsibilities." Branti at 518.

However, the example given by the Court, and echoed by the Defendants, does not support the termination of the Plaintiff and is not appropriate in this analysis as Plaintiff

3

PDF created with pdfFactory trial version www.pdffactory.com

has not changed her party registration, nor was her position confidential or policy making; Plaintiff does not qualify under any of the criteria that would support such a dismissal. The Defendants have failed to show that party affiliation is an appropriate requirement for the effective performance of the Plaintiff's duties.

Both Elrod and Branti have been interpreted to prohibit "the firing of public employees 'solely for the reason they were not affiliated with' a particular party or **candidate**." Knight v. Vernon, 214 F.3d 544, 548 (4th Cir. 2000) (emphasis added) (citing Branti, 455 U.S. at 517 (quoting Elrod, 427 U.S. at 350)). This same analysis has been applied by the Eighth Circuit in Barnes v. Bosley, 745 F.2d 501, 506 (8th Cir. 1984), which is discussed in more detail below.

Plaintiff does not dispute that political-party affiliation is a statutory requirement for Plaintiff's position, to the extent that there must be both a Republican and Democratic Assistant Director. However, just because political-party affiliation is required for a position does not transform Plaintiff into a policy maker. Plaintiff was neither a policy maker, nor was she a patronage employee and therefore she did not occupy a position in which political affiliation, within the meaning of Elrod and Branti, was necessary for the position.

Defendants' suggestions to the contrary misconstrue the Branti holding to incorrectly argue for the dismissal of Plaintiff's First Amendment claim. In Branti, the Court concluded, in *dictum,* that when state election law requires two judges of different parties, a Republican judge could be discharged for changing parties because party membership was necessary to the effective discharge of the employee's duties. Branti, 445 U.S. at 517. Plaintiff has not alleged, nor is there any evidence, that she changed her

4

PDF created with pdfFactory trial version www.pdffactory.com

political party affiliation so as to justify her discharge. Quite the opposite, Plaintiff alleged that she remained affiliated with her party throughout, however was fired when a new governor, with whom she was not politically connected, took office, so that new governor could put his supporters in office. Plaintiff's Complaint, ¶¶ 30, 40 & 43.

Our case is similar to that of the Plaintiff in Barnes v. Bosley where the Eighth Circuit permitted a similar claim to proceed. 745 F.2d 501 (8th Cir. 1984). Barnes involved the termination of public employees when a new court clerk took office; interestingly enough, in Barnes everyone involved, plaintiffs and defendants, were members of the same party. In support of the terminations, the defendant argued that he needed his own political supporters in the effected positions for the smooth functioning of the office. The Eighth Circuit disagreed and concluded that the discharges were actionable based upon "party affiliation" and violated the First and Fourteenth Amendments. The holding in Barnes clearly establishes that the First Amendment is violated when a public employee's discharge is based not only upon party affiliation, but also when the discharge is based upon lack of affiliation with a successful candidate.

Plaintiff alleged that before her dismissal Governor Blunt appointed three new members to the four member Board.[2] (The fourth seat was vacant at the time of Plaintiff's wrongful discharge.) Plaintiff's Complaint, ¶ 5. Of course Plaintiff's position was not appointive, and as set forth above, Plaintiff alleged that she was dismissed because she lacked affiliation with the Blunt administration, which fired her to put Blunt supporters into an otherwise non-appointive office. Plaintiff's Complaint, ¶¶ 30, 40 & 43.

---

[2] Section 115.027 R.S.Mo. provides that the four members of the Board of Election Commissioners are appointed by the governor.

PDF created with pdfFactory trial version www.pdffactory.com

Ironically, the Board cannot be dismissed by a new governor except for misconduct in office after a hearing. § 115.041 R.S.Mo. If statutorily the Board itself cannot be replaced when there is a change in administrations, it is difficult to imagine that party/candidate affiliation is an appropriate requirement for the assistant director position. See Barnes, 745 F.2d at 506. With respect to employees at Plaintiff's level, § 115.047 R.S.Mo. provides only that election board employees shall be selected in equal numbers from the two major political parties, it says nothing of the office being one of a policy maker or one dependent on patronage. Therefore, Plaintiff did not occupy the type of position exempt from First Amendment protection.

Pursuant to the criteria set forth in both Elrod and Branti, because Plaintiff was neither a policymaker nor in a position in which political affiliation was an appropriate requirement of the position, she has stated a claim for relief under the First Amendment based upon her wrongful discharge.

### 2. "Protected Activity"

Defendants mistakenly contend that Plaintiff must engage in some sort of "political activity" to be protected by the First Amendment; such is not the case. In support of this erroneous position, Defendants rely upon a single case: Graning v. Sherburne County, 172 F.3d 611, 615 (8th Cir. 1999). In Graning, the plaintiff claimed that she was fired for supporting one candidate over another in an election. The Graning holding states the requirements for establishing a *prima facie* case when a First Amendment claim is based upon one's political activity. The ruling itself however was premised on the fact that the Plaintiff had not provided facts, in a summary judgment proceeding, sufficient to support a finding that there was a causal connection between

6

PDF created with pdfFactory trial version www.pdffactory.com

that activity and her dismissal. Graning at 616. In the case at bar, the Plaintiff has adequately pled that she was terminated specifically because is not a politically ally of Governor Blunt; in effect, that she is not Republican enough. The Graning ruling will not serve to support the dismissal of her claims and Defendants motion must be denied.

Supporting Plaintiff's allegations, the 4th Circuit ruling of Knight v. Vernon, 214 F.3d 544, 548 (4th Cir. 2000), which cited Branti, 455 U.S. at 517 (quoting Elrod, 427 U.S. at 350)) found that the dismissal of a public employee based upon the employee's lack of affiliation with a particular party or candidate is actionable. Knight at 548.

Indeed in Elrod the Supreme Court concluded that public employees could not be fired based upon their lack of affiliation with those in power, even when there was no evidence that they engaged in any political activity. Elrod, 427 U.S. at 358. Similarly, in Branti there was no evidence that the fired public employees engaged in political activity or that this is a condition precedent to bringing a cause of action for wrongful discharge under the First Amendment when one is fired after a change in administrations. Branti, 446 U.S. at 507. In Knight an actionable wrongful discharge under the First Amendment occurred even when the public employee remained neutral in the election that occurred before her discharge. Knight, 214 F.3d at 547.

Simply put, there is no requirement that a plaintiff engage in any activity in order to state a claim for wrongful discharge under the First Amendment based upon lack of affiliation with a successful candidate because the "protected activity" is the associational right to one's political affiliations whether with a party of particular candidate.

PDF created with pdfFactory trial version www.pdffactory.com

**B. SUBSTANTIVE DUE PROCESS CLAIM**

The Eight Circuit recognizes two types of claims when asserting substantive due process rights: (1) government action that deprives a person of life, liberty or property without due process of law or (2) government action that shocks the conscience or offends judicial notions of fairness or human dignity. See Singleton v. Cecil, 176 F.3d 419, 424-425 and n. 7 (8th Cir. 1999). While Defendants rely heavily upon Singleton in arguing that Plaintiff has failed to state a claim for relief in Count IV, Singleton did not consider the "shocks the conscience" standard for establishing a substantive due process claim. Under this aspect of substantive due process, the question presented is whether the government's conduct is "truly irrational." Id. In her Complaint, Plaintiff alleged that the Defendants' conduct at issue herein shocked the conscious, offends judicial notions of fairness and was offensive to human dignity. Plaintiff's Complaint, ¶ 55.

The "shocks the conscience" component of substantive due process protection was discussed in Moran v. Clarke, 296 F.3d 638 (8th Cir. 2002). The Moran Court wished to clarify the various elements of a substantive due process claim in light of more recent Supreme Court precedent. Id. at 643-44. As in Singleton, the Moran court concluded that a valid substantive due process claim is asserted when government action "shocks the conscience, offends, judicial notions of fairness, or is offensive to human dignity." Id. at 643 (quotations omitted). The Court further articulated this standard as whether conduct "interferes with rights implicit in the concept of ordered liberty." Id. "In determining whether a substantive right protected by the Due Process Clause has been violated, it is necessary to balance 'the liberty of the individual' 'and the demands of an organized society.'" Id. (quoting Youngberg v. Romeo, 457 U.S. 307, 320 (1982).

8

PDF created with pdfFactory trial version www.pdffactory.com

The Moran court concluded that within the realm of rights protected by the substantive due process clause from government conduct that shocks the conscience are the rights to be free from an employer's stigmatizing conduct and the right to "engage without unreasonable interference and harassment, in any of the common occupations of life."[3] Id. at 645 (quoting Meyer v. Nebraska, 262 U.S. 390, 399 (1923). Plaintiff's complaint implicates both of these fundamental interests.

Once it is determined that a substantive due process right exists, whether the plaintiff has presented enough evidence to support a claimed violation of that right is a question of fact for the jury. Id. at 643. Therefore, resolving whether Defendants' conduct shocks the conscience is inappropriate in a motion to dismiss. However, if this Court should address this issue through Defendants' Motion to Dismiss, Count IV should not be dismissed because Plaintiff sufficiently pled that Defendant's conduct shocks the conscience.

"[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official actions most likely to rise to the conscience-shocking level." Id. at 647, (quoting County of Sacramento v. Lewis, 523 U.S. 833, 849 (1998). In the case at bar, the Plaintiff alleged that in July 1993, she was hired to serve as an assistant director of the Board of Election Commissioners. She pleads that she effectively served in this position for twelve (12) years without complaint until August 12, 2005, when she

---

[3] While Defendants rely upon Northcutt v. City of Wildwood, 2005 WL 3454425 (E.D. Mo. 2005) to suggest that Plaintiff should have known better than to bring a substantive due process claim, the Northcutt court relied only upon Singleton, which has been refined by Moran. Moran recognized that the fundamental right to engage in the common occupations of life without unreasonable interference or harassment was a substantive due process right protected by the Fourteenth Amendment. Additionally, Plaintiff's counsel has not had the opportunity to appeal the district court's opinion in Northcutt to the Eighth Circuit Court of Appeals because the case is still pending. Because Plaintiff's counsel was involved in the Moran case, counsel notes that the district court in Moran refused to recognize plaintiff's substantive due process claim, which decision was reversed by the Eight Circuit Court of Appeals. It is clear is that the law surrounding substantive due process rights continues to evolve.

9

PDF created with pdfFactory trial version www.pdffactory.com

and her Democratic counterpart were fired and other Board employees (two directors and two administrative assistants) suffered less severe adverse job actions, including demotions (to Plaintiff's position) and reprimands. All of this occurred after new Commissioners were appointed to the Board by Republican Governor Matt Blunt. This is exactly the kind of political massacre that shocks the conscience and offends traditional notions of justice and human dignity, particularly when the public employment at issue does not involve patronage positions. This conduct is particularly shocking because the Board had a Personnel Policies and Benefits Manual in effect at the time that provided that before it took an adverse job action against an employee, it was required to prepare and submit a written evaluation to the employee. Had the Board been interested in improving employee performance instead of executing a politically motivated massacre, it would have provided the affected employees with the evaluation required by its manual and given them the opportunity to correct any alleged deficiencies.

Should this Court disagree with Plaintiff that this conduct shocks the conscious and offends traditional notions of fairness, she can only preserve this issue for appeal through the allegations contained in Count IV, which are based upon her good faith belief that this claim falls within the scope of the substantive due process clause as articulated in Moran v. Clarke or an extension thereof.

### C. PROCEDURAL DUE PROCESS CLAIM

The employment manual, customs, practices and defacto policies of the Board of Election Commissioners established a legitimate claim of entitlement with the Board, and gave the Plaintiff a property interest in her employment with the Board. The Board had a

10

legal obligation to comply with the rules and policies it established and the Board's failure to do so constitutes a procedural due process violations.

A public employee has a property interest in his employment if he can establish that he has a legitimate claim of entitlement to continued employment absent a termination based on "sufficient cause" [Id. at 602]. See also, Winegar v. Des Moines Independent Community School Dist., 20 F.3d 895, 899 (8th Cir. 1994). "The hallmark of a property interest is an individual entitlement grounded in state law which cannot be removed except 'for cause'." Division of Family Services v. Cade, 939 S.W.2d 546, 552 (Mo.App. W.D. 1997). For purposes of due process, a property interest arises "if there are rules or mutually explicit understandings that support [a] claim for entitlement to the benefit . . .". Perry v. Sindermann, 408 U.S. 593, 601 (1972).

A property interest in employment can be created by statute, ordinance or by contract. Bishop v. Wood, 426 U.S. 342 (1976). An employee's property interest in his employment usually arises from the limitations placed upon the employer by statute or contract regarding termination of employees. State ex rel. Donelon, 971 S.W.2d at 874. A property interest may also be manifested by an employer's historical practices and conduct which rise to the level of a 'common law' of the employment relationship that both parties recognize as establishing their respective rights and responsibilities. Hughes v. Whitmer, 714 F.2d 1407, 1414 (8th Cir. 1983). The property interest in employment can also be implied by contract, arising out of customs, practices and defacto policies. Perry v. Sinderman, 408 U.S. at 601-602 (1972); Winegar at 899. A property interest may be implied by "words and conduct [and] surrounding circumstances". Perry at 602.

PDF created with pdfFactory trial version www.pdffactory.com

In Daniels v. Board of Curators of Lincoln University, the Court found that a college professor had a property interest in his employment due to the statement in his employment manual that "rules concerning dismissals are intended with good judgment and fair treatment." 51 S.W.3d 1, 9 -10 (Mo.App. W.D. 2001). Indeed, Daniels is instructive in response to Defendants assertion that the manual indicates that "all employees serve at the will and discretion of the Board." In Daniels, similar to the case at bar, the employee manual contained an assertion that the at-will employment could not be transformed. This simple regurgitation of wishful thinking did not stop the Daniels Court from finding that the defendant-employer created in [the plaintiff] a property interest through its policies and understandings and relinquished its ability to terminate the plaintiff at-will. See Daniels at 20-21.

Pursuant to the provisions of her employment manual, and the facts alleged by Plaintiff Bergfeld in her complaint, the Defendants promised the Plaintiff rights that caused her employment to transcend from that of an at-will employee, to one who has an interested in continuing employment. By the promises and assertions of the Board, both in writing and in action, Plaintiff was given a reasonable expectation of continued employment with the Board, based upon a stated policy of continued employment, subject to removal for cause after providing employees with certain substantive and procedural rights of due process of law. Defendants' motion to dismiss on this point must be denied.

**D. PUBLIC DISCLOSURE OF PRIVATE FACTS**

  **1. Plaintiff Has a Right to Plead in the Alternative**

With respect to Plaintiff's state law claim for the public disclosure of private

PDF created with pdfFactory trial version www.pdffactory.com

facts, under both Missouri Supreme Court Rule 55.10 and Fed.R.Civ.P. 8(e)(2), a party may plead two or more statements of a claim alternately either in one count or in separate counts.

When statements are made in the alternative, a pleading is not made insufficient by the insufficiency of the alternative statement. In the present case, Plaintiff has alleged a cause of action for defamation, if the statements made against her were false; and in the alternative, a cause of action for the public disclosure of private facts if the statements made against her were true. This type of pleading is specifically permitted under both the federal and Missouri rules of civil procedure.

A motion to dismiss should be granted only when it appears beyond doubt that the plaintiff can prove no set of facts that would entitle her to relief. In re: General American, 391 F.3d at 911. Count VI cannot be dismissed because Plaintiff's alternative pleading would entitle her to relief if all of the statements at issue are true.

### 2. The Statements Related to Private Matters of Which the Public Had No Legitimate Interest.

Under Missouri law, Plaintiff's release from the Election Board was a matter of public record. Section 610.021(3) R.S.Mo. (final decisions to fire, together with supporting/opposing votes are a matter of public record). However, the purported reasons for Plaintiff's discharge were not a matter of public record. Section 610.021(3) and (13) R.S.Mo. (personal information, defined as information relating to the performance or merit of individual employees is not a public record, nor are individually identifiable employment records). In Chambers v. Terex, Division of General Motors Corp., 1983 Ohio App. Lexis 12818 (March 31, 1983), the court concluded that an employer's disclosure of the reason an employee was discharged constituted an

13

PDF created with pdfFactory trial version www.pdffactory.com

actionable claim for the public disclosure of private facts. The same is true here because the information divulged was a closed record under Missouri law. For Defendants to contend otherwise would require the resolution of a factual dispute inappropriate for a motion to dismiss.

Defendants once again rely upon dictum taken out of context from a single Missouri appellate court case in support of their claim that Defendants' statements are not actionable. See Y.G. v. The Jewish Hospital of St. Louis, 795 S.W.2d 488, 499 (Mo. App. E.D. 1990). In Y.G., the issue before the Court was whether an invasion of privacy had occurred when a report was made that the plaintiff's triplets were conceived by in vitro fertilization. The Court concluded that the disclosure of this information constituted an actionable invasion of privacy. The Court did not conclude that confidential personnel matters involving public employees are matters of public concern, nor did the cases cited by the Court in Y.G. address the public disclosure of confidential personnel matters. While an allegation that Plaintiff embezzled funds or improperly influenced an election might arguably be related to matters of which the public had a legitimate interest, whether Plaintiff was deficient as a manager or was inappropriate in her supervision of subordinates (all allegations made by the Defendants without further clarification so that Plaintiff could not defend herself) are not matters of legitimate public concern.

Decisions of a state supreme court are binding on a federal court in a state law action. However, decisions of the intermediate appellate courts are not binding (although such decisions are persuasive authority). Continental Casualty Co. v. Advance Terrazzo & Title Co. Inc., 462 F.3d 1002, 1007 (8th Cir. 2006). *Dictum* taken out of context from a state appellate court decision is neither the best evidence, nor any real evidence, of what

PDF created with pdfFactory trial version www.pdffactory.com

state law is on an issue. Therefore, it is up to this court to predict how the state's highest court would resolve this issue. Id. In light of state law protecting the confidentiality of a public employee's personnel records, it is more likely that the state's highest court would conclude that the statements Defendants made about Plaintiff were not a matter of legitimate public interest.

### E. CLAIMS AGAINST MARTIN, FRANKS, AND DULA.

#### 1. Counts I and III – Discrimination Under Title VII and MHRA

Count I asserts a claim against all of the defendants for illegal discrimination under both Title VII and the Missouri Human Rights Act. Plaintiff does not disagree with Defendants Title VII analysis. Under Title VII, Martin, Franks and Dula may be liable to Plaintiff only in their **official** capacity. Bales v. Wal-Mart Stores, Inc., 143 F.3d 1103, 1111 (8th Cir. 1998). However, with a sleight of hand Martin, Franks and Dula appear to claim that the Title VII claim against them must be dismissed in its entirety based upon Ashford v. City of Lake Ozark, MO., 2006 U.S. Dist. LEXIS 6115 (W.D. Mo. Jan 25, 2006). However, Ashford concluded only that Plaintiff's Title VII claim against the individual defendants in their individual capacities should be dismissed. Id. at *7-8.

Defendants apparently concede by omission from their argument that Plaintiff may assert a claim against the individual Defendants in their individual capacities under the MHRA. In fact, this is exactly what the district court concluded in the Ashford case cited by the Defendants:

> This Court has previously agreed with its sister Courts in predicting that the Missouri Supreme Court will allow individual capacity suits under the MHRA. The Court sees no reason to deviate from this ruling. Id. at *10. (citations omitted).

15

PDF created with pdfFactory trial version www.pdffactory.com

Defendants offer no explanation as to why Plaintiff's §1983 claim against them, premised upon illegal discrimination, must be dismissed. Clearly §1983 permits both official and individual liability. The ability to hold a public employer liable under Title VII and an individual employee liable under § 1983 was recognized in Jackson v. City of St. Louis, 220 F.3d 894, 897 (8th Cir. 2000), which noted that there was virtually no case law addressing the apportionment of damages between the defendants under both theories of liability. Therefore, Defendants have failed to state any basis for the dismissal of Plaintiff's § 1983 action against them.

**2. Qualified Immunity**

In order to prevail on a claim of qualified immunity, a defendant must show that his/her conduct did not violate any constitutional right. If a constitutional right may have been violated, the Court must next determine whether the right was clearly established so that a reasonable person would have known a constitutional deprivation occurred. Hinshaw v. Smith, 436 F.3d 997, 1004 (8th Cir. 2006). The Eighth Circuit takes a "broad view" of what constitutes clearly established law for purposes of a qualified immunity defense. It is only necessary that the unlawfulness of the defendant's conduct be apparent in view of pre-existing law. If the law was clearly established, the qualified immunity defense fails because a "reasonably competent public official should know the law governing his conduct." Sexton v. Martin, 210 F.3d 905, 909-10 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982). Qualified immunity is a basis for dismissal only when immunity is established on the face of the complaint. Hafley v. Lohman, 90 F.3d 264, 266 (8th Cir. 1996).

PDF created with pdfFactory trial version www.pdffactory.com

The Supreme Court has held since 1980 that a public employee may not be terminated based upon his/her political affiliation unless such affiliation is a requirement for the position. Branti , 445 U.S. at 518-19. Therefore, since at least 1980, public employers have been on notice that very few public employees can be terminated due to a change in administration, as occurred in this case. In 1984, through the Barnes ruling the Eighth Circuit clarified that a public employee cannot be fired simply because the employee was not aligned/affiliated with a successful political candidate, again putting public employers on notice. Barnes, 745 F.2d at 501.

Plaintiff was in the type of position that protected her from the political winds of change as evidenced both by (1) Missouri law limiting the Commissioners themselves as the only political appointees (who cannot be fired after a change of administration); and (2) the fact that Plaintiff remained employed by the Board despite a previous change in administrations, albeit Democratic administrations. Therefore, under the broad view of what constitutes a clearly established constitutional right, Defendants qualified immunity defense must fail.

### 3. Claims Against Defendants in Their Official Capacities

There is no doubt that public officials may be sued in both their individual and official capacities. That an action against a supervisor in his official capacity is treated as a suit against the employer itself does not provide a basis for dismissing the Board member Defendants as this stage in their official capacities because the Board could only act through these Defendants. However, if this Court should dismiss the Board member Defendants in their official capacities, even though actions regularly proceed against entities and employees in both their individual and official capacities, Defendants must

17

PDF created with pdfFactory trial version www.pdffactory.com

be precluded from asserting any claim that the Board itself is not a proper party to this action under Missouri law.

## CONCLUSION

For the reasons set forth herein, Defendants' Motion to Dismiss should be denied in its entirety. If however this Court should find any technical deficiency in the pleading, Plaintiff requests and should be granted leave to amend her complaint because she has asserted viable theories of recovery under both state and federal law.

PLEBAN & ASSOCIATES, L.L.C.

By: /s/ Talmage E. Newton, IV
C. John Pleban, # 4066
Lynette Petruska, #15880
Talmage E. Newton, IV, # 510903
2010 South Big Bend Blvd.
St. Louis, Missouri 63117
(314) 645-6666 – Telephone
(314) 645-7376 – Facsimile

Attorneys for Plaintiff

### Certificate of Service

The undersigned hereby certifies that on this 6th day of November, 2006, a true and accurate copy of the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon:

Francis X. Neuner, Jr.
Thomas D. Veltz
1 North Brentwood Blvd., Ste. 1000
St. Louis, Missouri 63105

Attorneys for the Defendants

/s/ T. Newton

PDF created with pdfFactory trial version www.pdffactory.com