```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF MISSOURI
                     EASTERN DIVISION
```

| | |
|---|---|
| JEANNE BERGFELD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:06 CV 1025 DDN |
| | ) |
| BOARD OF ELECTION COMMISSIONERS | ) |
| FOR THE CITY OF ST. LOUIS, | ) |
| EDWARD R. MARTIN, JR., | ) |
| ANGELETTA McCORMICK FRANKS, and | ) |
| CLARENCE E. DULA, | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM AND ORDER**

This matter is before the court on the motion of defendants Board of Election Commissioners for the City of St. Louis, Edward R. Martin, Jr., Angeletta McCormick Franks, and Clarence E. Dula to dismiss. (Doc. 13.) The parties have consented to the authority of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 24.)

## **Background**

Plaintiff Jeanne Bergfeld brought this action against defendants Board of Election Commissioners for the City of St. Louis, Edward R. Martin, Jr., Angeletta McCormick Franks, and Clarence E. Dula, alleging that each defendant violated Title VII of the Civil Right Act of 1964, 42 U.S.C. § 2000e et seq.; the Missouri Human Rights Act, Mo. Rev. Stat. § 213.010 et seq.; the Constitution of the United States;[1] and Missouri common law. Plaintiff alleges that she was employed from 1993 to 2005 as a Republican Assistant Director of Operations for the Board.

Plaintiff alleges her termination was by letter signed by defendants Martin, Franks, and Dula, stating that it was "for cause." She alleges that six other employees received the same letter in August 2005, accusing them of failing to supervise subordinates ("direct reports"), exhibiting indifference to the welfare of Board employees,

---

[1] Plaintiff seeks to vindicate her constitutional rights through 42 U.S.C. § 1983.

and failing to maintain bi-partisan management.  Plaintiff alleges that she was not reprimanded for her performance before her termination.  Of the six other employees who received the same letter as she, the two females were terminated, while the four males were only demoted.  She alleges she was fired because of her gender, or, in the alternative, because she was "not Republican enough" and because the Board wanted to replace her with a supporter of Missouri Governor Matt Blunt.

Plaintiff's complaint alleges the following claims:

1. Count I:  gender discrimination in violation of Title VII and the Missouri Human Rights Act;

2. Count II:  termination for political reasons in violation of the First Amendment freedom of speech;

3. Count III:  gender discrimination in violation of Title VII and the Equal Protection Clause;

4. Count IV:  deprivation of property and liberty interests in violation of plaintiff's substantive due process rights under the Fifth and Fourteenth Amendments;

5. Count V:  deprivation of procedural due process rights under the Fifth and Fourteenth Amendments;

6. Count VI:  defamation of character under Missouri common law; and

7. Count VII:  public disclosure of private facts under Missouri common law.

(Doc. 1.)

All defendants have moved to dismiss several claims, arguing that plaintiff's First Amendment claims in Count II must be dismissed because her political affiliation was a requirement of her job position.  They argue that her Due Process claim in Count IV should fail because she had no property or liberty interest entitled to constitutional protection.  They argue that Count VII must fail because it duplicates her defamation claim, and because the statements made about her were of public interest.  Defendants argue that the Title VII claims in Counts I and III should be dismissed against individual defendants Martin, Franks, and Dula because there is no personal liability for these claims.  Further, they argue the individual defendants should be dismissed from

Counts II, IV, and V because they are entitled to qualified immunity for Section 1983 claims. They also argue that all claims against all individual defendants in their official capacities should be dismissed because they duplicate the claims against the Election Board.

Plaintiff contends that, because she was not a policy maker and her position did not require loyalty to a particular candidate, she could not be terminated because of her political affiliation. She argues that she has an interest in engaging in the common occupations of life and that the defendants' actions shock the conscience, giving rise to a substantive due process claim. She further argues that a public employee has a property interest in her employment unless sufficient cause is shown, supporting her procedural due process claim. She argues that she has a right to plead the alternative claims of defamation and public disclosure of private facts. Further, she argues that the statements made were not of public interest. She argues that the Title VII claims against the individuals should not be dismissed because she is suing them in their official capacities. She also argues that the individual defendants are not entitled to qualified immunity because they violated her constitutional rights.

## Discussion

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) challenges the legal sufficiency of the complaint. Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993); Holden Farms, Inc. v. Hog Slat, Inc., 347 F.3d 1055, 1059 (8th Cir. 2003). When ruling the motion, the court must consider all facts alleged in the complaint as true, and must grant the motion only if the facts alleged do not entitle the plaintiff to relief under the law. Leatherman, 507 U.S. at 164; Knapp v. Hanson, 183 F.3d 786, 788 (8th Cir. 1999).

### Count I

Defendants have moved to dismiss the Title VII claims in Count I against individual defendants Franks, Dula, and Martin because there is

no individual liability under Title VII.[2] Plaintiff argues that she is suing them in their official capacities.

Count I alleges that plaintiff's gender was a motivating factor in defendants' decision to terminate her employment. The complaint specifically alleges that defendant Martin is sued "[i]ndividually and in his official capacity as the Chairman of the Board of Election Commissioners," defendant Franks "[i]ndividually and in her official capacity as a Member of the Board of Election Commissioners," and defendant Dula "[i]ndividually and in his official capacity as a Member of the Board of Election Commissioners."

Title VII provides:

It shall be an unlawful employment practice for an employer–

> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. . . .

42 U.S.C. § 2000e-2. By its express provisions, Title VII claims can only be brought against an employer, and courts have held that this does not include co-workers. Powell v. Yellow Book USA, Inc., 445 F.3d 1074, 1079 (8th Cir. 2006); Smith v. St. Bernards Regional Medical Center, 19 F.3d 1254, 1255 (8th Cir. 1994).

Further, a supervisor may not be held liable in his individual capacity under Title VII. Roark v. City of Hazen, Arkansas, 189 F.3d 758, 761 (8th Cir. 1999). A supervisor is considered an "employer" when sued in his official capacity, but such a claim is duplicative if the employer and supervisor are both sued. Green v. City of St. Louis, 2006 WL 1663439, at *10 (E.D. Mo. June 15, 2006); Coller v. State of Missouri Dept. of Economic Development, 965 F. Supp. 1270, 1275 (W.D. Mo. 1997); see also Henderson v. St. Louis County, 2006 WL 3538799 at *1 (E.D. Mo. December 7, 2006).

---

[2]Defendants have not specifically moved to dismiss the Missouri Human Rights Act claims brought in Count I, but they argue that all claims against all the individuals in their official capacities should be dismissed as duplicative of those against the Board.

Plaintiff has sued the Board and her three supervisors in both their individual and official capacities. Whether the individuals are sued in their individual or their official capacities, the claims under Title VII against them must fail. Any claims against them as her employment supervisors are duplicative of the claims against the Board. And the claims against them as individuals fail because, as such, they are not her employers under Title VII.

Therefore, Count I of plaintiff's complaint as it concerns Title VII is dismissed against defendants Franks, Dula, and Martin.

Count I also claims that all defendants violated the Missouri Human Rights Act, and defendants move that all claims against the individual defendants in their official capacities be dismissed because they are duplicative of the claims against the Board. "[A] suit against a supervisor in his or her official capacity is treated as a suit against the employer itself." Green, 2006 WL 1663439, at *10. However, the MHRA allows for liability against an individual in his or her individual capacity. Cooper v. Albacore Holdings, Inc., 204 S.W.3d 238, 244 (Mo. Ct. App. 2006). Therefore, the MHRA claims are not dismissed against the individual defendants in their individual capacities.

**Count II**

Defendants move to dismiss Count II in which plaintiff alleges defendants violated her First Amendment rights by firing her because of her political affiliation. Defendants argue that they could fire her for this alleged reason, because belonging to a certain political affiliation was a requirement of her job.

An employee may be terminated from her job because of her political affiliation, if her position involved policymaking and confidentiality. Branti v. Finkel, 445 U.S. 507, 510-11 (1980). "If an employee's private political beliefs would interfere with the discharge of [her] public duties, his First Amendment rights may be required to yield to the State's vital interest in maintaining governmental effectiveness and efficiency." Id. at 517 (if state election law requires a supervisor from both parties, a party could be fired for changing affiliation). The Supreme Court held that "the question is whether the hiring

authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." Id. at 518; Barnes v. Bosley, 745 F.2d 501, 505-06 (8th Cir. 1984). This rule also applies when the employer and employee are members of the same party, but hold different views. Billingsley v. St. Louis County, 70 F.3d 61, 63 n.1 (8th Cir. 1995).

Assuming, as we must, that plaintiff's allegations that she was fired because of her party affiliation are true, dismissal of this claim is not proper at this time because the issue of whether or not party affiliation is an appropriate requirement for her job remains for evidentiary presentation. See Branti, 445 U.S. at 518. Defendants argue that, because party affiliation was a statutory requirement of her job, they could fire plaintiff for having a different party affiliation. While the Supreme Court held that when party affiliation was a requirement of a statute, an employee could be terminated if the employee changed parties, plaintiff did not allege she changed her political party affiliation, which would have warranted her termination under Branti. Further, plaintiff's allegations have not established and defendants have not established as a matter of law that plaintiff's position was of a confidential or policy making nature. There is nothing alleged in plaintiff's complaint that indicates that her position was one of trust and confidence with Governor Blunt or any Republican employee.

Defendants argue that all claims, including Count II, should be dismissed against the individual defendants in their official capacities because bringing the claims against both them and the Board is duplicative. "[A] suit against a supervisor in his or her official capacity is treated as a suit against the employer itself." Green, 2006 WL 1663439, at *10. Therefore, the Count II claims against the individual defendants in their official capacities as members of the Board are dismissed.

Therefore, defendants' motion to dismiss Count II is denied as to the Board, and sustained as to the individual defendants in their official capacities.

**Count III**

Defendants argue that Count III, alleging violations of Title VII and of the Equal Protection Clause, must be dismissed against the individual defendants for the same reasons set forth regarding Count I. For the reasons stated above, the Title VII claims against the individual defendants are dismissed.

Although defendants specifically exclude the Equal Protection Clause claims in their general discussion of Count III,[3] they argue generally that <u>all</u> claims against the individual defendants must be dismissed because such claims duplicate the claims against the Board. The court agrees. For the reasons stated above regarding Count II, the Equal Protection Clause claims against the individual defendants in their official capacities are dismissed as duplicative of the claims against the Election Board.

**Count IV**

Defendants argue that plaintiff's substantive due process claim in Count IV should be dismissed because she had no constitutionally protectable property interest in her continued employment, she had no constitutionally protectable liberty to engage in the common occupations of life, and she did not have a constitutionally protectable liberty interest in her good name.

Plaintiff alleges that her substantive due process rights were violated because defendants' actions in depriving her of these interests "shocks the conscience" and was arbitrary and capricious. She argues that for a due process violation, she need show only that a government action deprived her of life, liberty, or property; or that a government action shocks the conscience. She argues that the defendants' actions shock the conscience. (Doc. 27 at 8.)

To make a claim for a substantive due process violation, plaintiff must show that either she has been deprived of life, liberty or property interest, or that the "conduct [was] so outrageous that it shocks the

---

[3]Defendants do not move to dismiss the portion of Count III that alleges a violation of the Equal Protection Clause, and they note that their motion to dismiss Count III relates only to the Title VII claim.

-7-

conscience or otherwise offends 'judicial notions of fairness, [or is] offensive to human dignity." Moran v. Clarke, 296 F.3d 638, 643 (8th Cir. 2002) (quoting Weimer v. Amen, 870 F.2d 1400, 1405 (8th Cir. 1989)); see also Singleton v. Cecil, 176 F.3d 419, 425 n.7 (8th Cir. 1999).

When considering a substantive due process claim, the court "must weigh 'the individual's interest in liberty against the State's asserted reasons for restraining individual liberty.'" Moran, 296 F.3d at 644 (quoting Youngberg v. Romeo, 457 U.S. 307, 320 (1982)). The court must consider the liberty interest at stake and the demands of an organized society, but, ultimately, "we assess whether the government's contested actions are conscience shocking." Moran, 296 F.3d at 644 (investigation, prosecution, suspension without pay, demotion, and stigmatization by falsely created evidence shocks the conscience). The Moran court noted that a person has a right to be free from employment stigmatizing conduct. Id. at 645.

Further, mere "deliberate indifference" does not support a finding of conscience shocking behavior. Moran, 296 F.3d at 647. "[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience shocking level." Id. at 647 (quoting County of Sacramento v. Lewis, 523 U.S. 833, 849 (1998)). Such conduct must be "inspired by malice or sadism." Moran, 296 F.3d at 647.

However, the Eighth Circuit also noted that, when another constitutional provision offers relief for alleged conduct, that constitutional provision should be litigated in lieu of a substantive due process claim. Moran, 296 F.3d at 646. Here, the alleged termination for political affiliation implicates the First Amendment. Therefore, plaintiff's Count IV claim should be pursued under the First Amendment and not as a substantive due process violation. Cf., Northcutt v. City of Wildwood, 2005 WL 3454425 (E.D. Mo. December 16, 2005).

For these reasons, without ruling the merits of plaintiff's substantive due process claim, the motion of defendants to dismiss plaintiff's Count IV substantive due process claim is sustained.

**Count V**

Defendants argue that the Count V procedural due process claim should be dismissed because plaintiff has not been deprived of any constitutionally protectable property interest. Plaintiff alleges that the Election Board's Employment Rules and Policies require a written evaluation prior to any negative employment action. She alleges she was not provided a written evaluation prior to her termination, and that this conduct violates her procedural due process rights.

The first step in analyzing a procedural due process claim is determining whether plaintiff alleges deprivation of an interest protected by the Constitution. Singleton, 176 F.3d at 424; Warren v. Board of Education of the City of St. Louis, 200 F. Supp. 2d 1053, 1064 (E.D. Mo. 2001). Plaintiff argues that she was deprived of a property interest in her employment position.[4] If such a property interest exists, the court must decide if the procedures used to deprive her of her employment were constitutionally sufficient. Warren, 200 F. Supp. 2d at 1065-66.

"A protected property interest exists where a plaintiff has a 'legitimate claim of entitlement' to a benefit that is derived from a source such as state law." Hopkins v. Saunders, 199 F.3d 968, 975 (8th Cir. 1999) (quoting Board of Regents v. Roth, 408 U.S. 564, 577 (1972)). "A public employee has a property interest when there are 'contractual or statutory limitations on the employer's ability to terminate an employee,' such as a contractual right to be terminated only for cause." Bennett v. Watters, 260 F.3d 925, 927 (8th Cir. 2001) (quoting Winegar v. Des Moines Independent Community School Dist., 20 F.3d 895, 899 (8th Cir. 1994)). The failure of a governing body to follow its own rules and procedures with respect to termination does not, without more, give rise to a protected property interest. Batra v. Board of Regents of University of Nebraska, 79 F.3d 717, 720 (8th Cir. 1996).

Here, there is no statute or contract alleged to grant plaintiff a constitutionally protectable property interest in her Board position.

---

[4]In her response to defendants' motion to dismiss, plaintiff does not argue that her reputation or liberty interests were not afforded procedural due process. (Doc. 27 at 10-12.)

Plaintiff argues that the Board's policies establish this property interest, because the policies provided that she would be given a written evaluation before any negative employment action was taken. The court does not agree.

The employment policies of the Board provide that an employee would be evaluated before a dismissal. Plaintiff argues that an employee handbook can give rise to a custom supporting a property interest, and cites Daniels v. Board of Curators of Lincoln University, 51 S.W.3d 1 (Mo. Ct. App. 2001) in support of that contention. In Daniels, the Missouri Court of Appeals found that specific language in the Board of Curators' policies that promised to treat employees fairly and to terminate only for cause supported a finding of a property interest. Daniels, 51 S.W.3d at 10. This is factually unlike the allegations plaintiff makes in this case.

Here, the Board's policies allegedly state that employees would be evaluated before every negative action, but they are not alleged to provide that a termination must be for cause, nor do the policies promise to treat employees fairly. (Doc. 1 Attach. 1.) Without more, failure of the defendants to follow their own rules and evaluate plaintiff prior to her termination does not give rise to a constitutionally protectable property interest.

Therefore, defendants' motion to dismiss Count V is sustained.

**Count VI**

Defendants argue that all claims, including Count VI, should be dismissed against the individual defendants in their official capacities because they duplicate the claims against the Board. Similar to Counts I, II, and III, plaintiff's Count VI claim is dismissed against the individual defendants in their official capacities. See Green, 2006 WL 1663439, at *10.

**Count VII**

Defendants argue that the Count VII Missouri common law claim for public disclosure of private facts should be dismissed because it is a restatement of her state law defamation claim and the information shared

with the news media was of public interest. Plaintiff argues that the private facts shared were not a matter of public interest and that she has a right to plead in the alternative.

Count VII alleges that, alternatively to her defamation claim in Count VI, defendants publicly disclosed private facts. She alleges that defendants published publicly the reasons for her termination, which were personal in nature. She describes the subject facts by referring to those alleged in ¶ 64 of Count VI: that she was indifferent to the health and welfare of her staff, that she was inappropriate in her supervision of her subordinates, that she caused unspecified concerns relating to safety and security, that she failed to maintain bi-partisan management, and that she was otherwise deficient as a manager. Plaintiff does not allege in Count VII whether the subject facts are true or false.

Missouri law recognizes the tort of public disclosure of private facts. McNally v. Pulitzer Pub. Co., 532 F.2d 69, 78 (8th Cir. 1976). Elements for this cause of action are:

> (1) the publication, (2) absent any waiver or privilege, (3) of private matters in which the public has no legitimate concern, (4) such as to bring shame or humiliation to a person of ordinary sensibilities.

Id.; Balke v. Ream, 33 S.W.3d 589, 594 (Mo. Ct. App. 2000).

Defendants argue that plaintiff can not simultaneously allege both a claim for public disclosure of private facts and a defamation claim. A claim of public disclosure of private facts involves true statements, while a defamation claim involves untrue statements. Hester v. Barnett, 723 S.W.2d 544, 563 (Mo. Ct. App. 1987).

In Count VI, plaintiff alleges that the reasons cited for her termination were untrue, and that she was only terminated because of her gender and political affiliation. However, no allegation of truthfulness or falsity is made regarding the statements in Count VII. It is premature for the court to determine whether any allegedly disclosed fact, invoked by plaintiff as actionable under Count VII, is true or false. Such a determination will be left to more specific pretrial motion practice or to a factfinding jury at trial. Therefore, the motion to dismiss Count VII is denied.

In consequence,

**IT IS HEREBY ORDERED** that the motion of the defendants to dismiss (Doc. 13) is ruled as follows:

Count I is dismissed against the individual defendants in both their individual and official capacities as far as it concerns Title VII. The MHRA claims remain pending against the defendant Board of Election Commissioners and the individuals in their individual capacities.

Count II is dismissed against the individual defendants in their official capacities, but remains pending against the defendant Board of Election Commissioners.

Count III's Title VII claims are dismissed against the individual defendants, and the Equal Protection claim is dismissed against the individual defendants in their official capacities. Both claims remain pending against the defendant Board of Election Commissioners.

Count IV is dismissed in its entirety.

Count V is dismissed in its entirety.

Count VI is dismissed against the individual defendants in their official capacities. Count VI remains pending against the defendant Board of Election Commissioners and the individual defendants in their individual capacities.

The motion to dismiss Count VII is denied.

    /S/ David D. Noce
**DAVID D. NOCE**
**UNITED STATES MAGISTRATE JUDGE**

Signed on April 5, 2007.